IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| JOAN GINES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV 04-575-S-LMB |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| ALBERTSON'S, INC. and ALBERTSON'S | ) | |
| VOLUNTARY SEPARATION PLAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Currently pending before the Court are Defendants' Motion for Summary Judgment (Docket No. 39) and Plaintiff's Second Motion for Extension of Case Management Deadlines (Docket No. 40). Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

I.

BACKGROUND

In 2001, Joan Gines ("Plaintiff") left her job of twenty-two years to begin a new job at the University of Utah. *Aug. 20, 2001, Letter from Snow to Gines*, Exhibit A, pt. 2, to Smith *Affidavit*, p. 1 (Docket No. 60, Att. 2); *Sept. 17, 2001, Letter from Gines to Snow*, Exhibit A, pt. *2, to Smith Affidavit*, p. 7 (Docket No. 60, Att. 2). Prior to leaving her job, Plaintiff had been working in Utah as an employee of RxAmerica, LLC, which, according to Plaintiff, is within the Albertson's, Inc. ("Defendant" or "Albertson's") organization. *See Sept. 17, 2001, Letter from*

**MEMORANDUM DECISION AND ORDER -1-**

*Gines to Snow*, *Exhibit A, pt. 2, to Smith Affidavit*, p. 7 (Docket No. 60, Att. 2); *Plaintiff's Memorandum in Opposition*, p. 20 (Docket No. 53). According to Defendant, however, RxAmerica, LLC, is not wholly within the Albertson's organization, but is a joint venture partly owned by Albertson's. *Defendants' Memorandum in Support of Motion for Summary Judgment*, p. 4 (Docket No. 39, Att. 1).

Before Plaintiff decided to leave her long-held position, she heard rumors about imminent layoffs and downsizing at Albertson's. *Gines Deposition*, *Exhibit A, pt. 1, to Gavre Affidavit*, p. 22 (Docket No. 59, Att. 1); *Gines Deposition*, *Exhibit B to Smith Affidavit*, p. 7 (Docket No. 60, Att. 3). On June 11, 2001, knowing of the rumors, Plaintiff asked John Gardynik, General Manager of RxAmerica, whether there was any chance of her receiving a severance package upon leaving her job. *Gines Deposition*, *Exhibit A, pt. 1, to Gavre Affidavit*, p. 18 (Docket No. 59, Att. 1). Gardynik told her there was "no chance" for that. *Id*. On June 13, 2001, Plaintiff spoke to Dean "Jack" Snow, Group Vice President of HR Administration and Employee Benefits. *Id*. at p. 22; *Plaintiff's Memorandum in Opposition*, p. 4 (Docket No. 53). According to Plaintiff, she spoke to Snow "to see if there was 'anything in the works' with respect to an Albertson's severance package and to explain that she was 'flexible' about her retirement date and start at the University if a package might be coming." *Plaintiff's Memorandum in Opposition*, p. 4 (Docket No. 53); *Gines Deposition*, *Exhibit B to Smith Affidavit*, p. 7 (Docket No. 60, Att. 3). Snow told her nothing about a severance package. *Gines Deposition*, *Exhibit B to Smith Affidavit*, p. 9 (Docket No. 60, Att. 3).

Plaintiff retired from RxAmerica, LLC on June 29, 2001. *Sept. 17, 2001, Letter from Gines to Snow*, *Exhibit A, pt. 2, to Smith Affidavit*, p. 7 (Docket No. 60, Att. 2). On July 18, 2001, Albertson's announced its Voluntary Separation Plan ("VSP"), and sent Plaintiff a letter

**MEMORANDUM DECISION AND ORDER -2-**

stating, "Our records indicate that you could be eligible to participate in the Company's Voluntary Separation Plan," to which was attached a Summary Plan Description ("SPD").  *SPD, Exhibit A, pt. 1, to Smith Affidavit*, p. 2 (Docket No. 60, Att. 1).  The SPD states that

> [a]ny active, salaried, non-officer, regular, full-time Company associate ("Salaried Associate") who has been continuously employed by the Company for at least 20 years as of December 31, 2001 and who is employed at the General Office, at one of the Division offices or as a member of the administrative staff in a Distribution Center, is eligible to participate.

*Id.* at p. 4.  Enclosed in the July 18, 2001, letter was a document in which Albertson's responded to the question "Who is eligible to receive the Voluntary Separation Plan?" by stating "[a]ctive, full-time associates who will have 20 full years of continuous service by December 31, 2001.  This Voluntary Plan is being offered to associates in the General Office, Division Offices and certain Distribution Center Office associates company-wide."  *Id*. at p. 13.

On August 2, 2001, Plaintiff sent Albertson's a completed Election Form for the VSP.  *Albertson's VSP Election Form*, *Exhibit A, pt. 1, to Smith Affidavit*, p. 18 (Docket No. 60, Att. 1).  Albertson's denied her request to participate in the VSP and pointed out, in its initial letter, that "Sections 2.2 and 3.1 of the Plan require an individual to be an active, regular, full-time exempt (salaried) or non-exempt (hourly) employee in order to participate in the Plan."  *Aug. 20, 2001, Letter from Snow to Gines*, *Exhibit A, pt. 2, to Smith Affidavit*, p. 1 (Docket No. 60, Att. 2).  In its initial denial letter, Albertson's did not state that the reason Plaintiff was not qualified to participate in the VSP was because she had not worked in the General Office, a Division Office, or as a member of the administrative staff in a Distribution Center.  *See id*.  However, in subsequent communications on the subject, Plaintiff was told that she could not have qualified to participate in the Plan because she had not worked in the General Office, a division office, or a

**MEMORANDUM DECISION AND ORDER -3-**

distribution center of Albertson's.  *Sept. 17, 2001, Letter from Gines to Snow*, *Exhibit A, pt. 2, to Smith Affidavit*, pp. 7–8 (Docket No. 60, Att. 2) (listing Plaintiff's recollection of conversations on the subject of her eligibility for the VSP in which she was told she would not have been eligible because "RxAmerica was not eligible for participation").

Though there were numerous communications on the subject of Plaintiff's eligibility to participate in the VSP, one of the most notable communications was a November 26, 2001, letter from Defendant denying Plaintiff's appeal from its decision that she was ineligible to participate in the VSP.  *Nov. 26, 2001, Letter from Snow to Gines*, *Exhibit A, pt. 2, to Smith Affidavit*, pp. 11–12 (Docket No. 60, Att. 2).  In that letter, Snow acknowledged that he had been aware of the plans for the VSP when Plaintiff had spoken to him, but that "it was not possible for anyone within the company to apprise [her] that such a plan would be offered" and that "[v]ery few individuals were aware that the Plan was even under consideration."  *Id*. at p. 11.

On November 16, 2004, Plaintiff filed a Complaint against Defendants Albertson's, Inc., and the VSP, alleging that Albertson's breached its fiduciary duty under ERISA Section 404, 29 U.S.C. § 1104, "causing Gines to believe that Albertson's would not offer and/or was not seriously considering offering, a severance package in the near future."  *Complaint*, p. 5 (Docket No. 1).

## II.

## MOTION FOR SUMMARY JUDGMENT

On July 3, 2006, Defendants filed their Motion for Summary Judgment (Docket No. 39), seeking an order dismissing this action with prejudice, arguing that Plaintiff's claim for breach of fiduciary duty fails for any of the following three reasons: (1) Plaintiff was not eligible to participate in the VSP, (2) Plaintiff's claim is time barred, and (3) the duty to disclose the VSP

**MEMORANDUM DECISION AND ORDER -4-**

did not arise because Plaintiff did not make a legally-sufficient request for information from fiduciaries. *Defendants' Memorandum in Support of Motion for Summary Judgment*, p. 2 (Docket No. 39, Att. 1).

A.   **Summary Judgment Standard**

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56, which provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

1.   **Genuine Issue of Material Fact**

According to Rule 56, an issue must be both "material" and "genuine" to preclude entry of summary judgment. An issue is "material" if it affects the outcome of the litigation. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975). A material fact is

> one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

An issue is "genuine" when there is "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn*, 523 F.2d at 464 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Accordingly, "[a] mere scintilla of evidence supporting the non-moving party's position is insufficient; there must be evidence on which a jury could reasonably find for the

nonmoving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Likewise, "mere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) (citing *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995)). Further, because factual disputes are to be resolved at trial, in ruling on summary judgment motions, the Court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id*. at 631.

### 2.     Moving and Nonmoving Parties' Burdens

The initial burden is on the moving party to show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983); Fed. R. Civ. P. 56(c). If the moving party meets its initial burden, the nonmoving party must "produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Steckl*, 703 F.2d at 393 (quoting *Ruffin v. County of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979)). In addition, the nonmoving party must make a showing sufficient to establish the existence of an element that is essential to the party's case and upon which the party will bear the burden of proof at trial; otherwise, summary judgment is required. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the nonmoving party fails to make such a showing on any essential element of the nonmoving party's case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323; *see also* Fed. R. Civ. P. 56(e).[1]  In order to withstand a motion for summary judgment, a nonmoving party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distribs., Ltd. v. S.F. Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir. 1989) (citation omitted).

In recent years, the Supreme Court, "by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987).  Therefore, "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *Id*.  Nonetheless, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv., Inc.*, 809 F.2d at 631; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding a motion for summary judgment must be denied when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party").

### B.   Plaintiff's Eligibility to Participate In the Plan

Plaintiff brings her claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1104, which sets forth the duties owed by a fiduciary under the Employment Retirement Income

---

[1] Rule 56(e) states that, in responding to a motion for summary judgment,
> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

**MEMORANDUM DECISION AND ORDER -7-**

Security Act ("ERISA"). *Complaint*, ¶ 15 (Docket No. 1). While Section 1104 sets forth the duties, Section 1109 sets forth the liability for breach of those fiduciary duties, and Section 1132(a)(2) sets forth the standing requirements for suits brought under Section 1109. 29 U.S.C. §§ 1104, 1109, 1132(a)(2).

Section 1132 states that "[a] civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under Section 1109." 29 U.S.C. § 1132(a)(2); *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1040 (9th Cir. 2006). Accordingly, Plaintiff cannot maintain her action if she could not have been a participant, beneficiary, or fiduciary of the VSP, even though she believes she was eligible to be a participant. *See Plaintiff's Memorandum in Opposition to Motion for Summary Judgment*, pp. 18–19 (Docket No. 53).

Pursuant to the VSP, a "participant" in the VSP is "an Associate who during the period from July 18, 2001 to August 2, 2001, submit[ted] a completed and signed participation election form . . . to the Company and [was] accepted by the Company as a Participant." *VSP*, *Exhibit C, pt. 4, to Smith Affidavit*, ¶ 2.6, p. 2 (Docket No. 60, Att. 7). As defined in the VSP, an "Associate"

> means any active, regular full-time exempt (salaried) or non-exempt (hourly) employee of the Company who is (i) employed at the General Office or a satellite office, at one of the Division offices or as a member of the administrative staff in a Distribution Center, and (ii) who has been continuously employed by the Company for at least twenty full Years of Service as of December 31, 2001.

*Id*. at ¶ 2.2, p. 1.[2]

---

[2] Notably, "Company" is defined as "Albertson's, Inc. and its wholly-owned subsidiaries." *VSP, Exhibit C, pt. 4, to Smith Affidavit*, ¶ 2.3, p. 2 (Docket No. 60, Att. 7). Given the parties' disagreement over whether RxAmerica, LLC, was a wholly-owned subsidiary of Albertson's, the parties likewise disagree over whether Plaintiff qualified as an

(continued...)

**MEMORANDUM DECISION AND ORDER -8-**

Defendants argue that Plaintiff could not have participated in the VSP, even if she had not terminated her employment, because she had not been "employed at the General Office or a satellite office, at one of the Division offices or as a member of the administrative staff in a Distribution Center." *Defendants' Memorandum in Support of Motion for Summary Judgment*, pp. 18–19 (Docket No. 39, Att. 1).  According to Defendants, "Albertson's General Office and satellite offices were in Boise, Idaho.  Albertson[']s had only one 'Division office' and distribution center in Utah at the time the VSP was announced, which were completely separate from the RxAmerica offices."  *Id*. (citations omitted).

At the October 19, 2006 hearing, Plaintiff agreed that successful prosecution of her case is dependent, in all respects, on whether or not she qualifies as one of the employees in one of the three categories of the Associate definition in the VSP, i.e., on whether she had been "employed at the General Office or a satellite office, at one of the Division offices or as a member of the administrative staff in a Distribution Center."  However, there is nothing alleged or any evidence in the record to support a finding that Plaintiff was, either at the time the VSP was offered or beforehand, "employed at the General Office or a satellite office, at one of the Division offices or as a member of the administrative staff in a Distribution Center."

At her deposition, Plaintiff agreed that the only category of the "Associate" definition under which she might be eligible to participate in the VSP is the category for those "employed at a Division Office."  *Gines Deposition*, *Exhibit B to Smith Affidavit*, p. 13 (Docket No. 60, Att. 3).  In her deposition, Plaintiff was asked, "RxAmerica also didn't constitute in terms of the

---

[2](...continued)
"employee of *the Company*."  *Plaintiff's Memorandum in* Opposition, p. 1 (Docket No. 53); *Defendants' Memorandum in Support of Motion for Summary Judgment*, p. 4 (Docket No. 39, Att. 1).  The Court need not resolve this issue if Plaintiff was not otherwise eligible to participate in the VSP.

**MEMORANDUM DECISION AND ORDER -9-**

operations of Albertson's Grocery or Drugstore business, it didn't constitute a Division Office either; isn't that correct?" to which she answered "That's correct." *Id.* Further, when asked whether she knew of any "documents generated by Albertson's that refer to the RxAmerica offices as a Division Office" she could not name one. *Id.* Likewise, a review of the existing record also fails to locate such a document or evidence.

Having carefully reviewed the record, the Court finds, and thus concludes, that, because there is no evidence to support a conclusion that Plaintiff was employed at a satellite office, at one of the Division offices, or as a member of the administrative staff in a Distribution Center, Plaintiff was not an "Associate" as defined in the Plan and was not eligible to participate in the VSP. Accordingly, Plaintiff could not fall within the category of a "participant, beneficiary, or fiduciary" under 29 U.S.C. § 1132 and, thus, cannot maintain her ERISA claim for breach of fiduciary duty against Defendants.[3] Defendants' Motion for Summary Judgment (Docket No. 39) is granted.

### III.

### MOTION FOR EXTENSION OF CASE MANAGEMENT DEADLINES

On July 17, 2006, Plaintiff filed her Second Motion for Extension of Case Management Deadlines (Docket No. 40), seeking "an extension of time for all remaining case management deadlines set forth in the parties' December 13, 2005 Stipulation for Order Amending Case Management Order, to 45 days after the Court's ruling on defendants' motion for summary judgment." Because summary judgment has been granted, Plaintiff's Second Motion for Extension of Case Management Deadlines (Docket No. 40) is denied as moot.

---

[3] Because Plaintiff cannot maintain her claim due to her ineligibility to participate in the VSP, the Court need not address Defendants' other arguments, i.e., that Plaintiff's claim is time barred and that Plaintiff did not make a legally-sufficient request for information from fiduciaries.

## IV.

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED:

1. Defendants' Motion for Summary Judgment (Docket No. 39) is GRANTED.

2. Plaintiff's Second Motion for Extension of Case Management Deadlines (Docket No. 40) is MOOT.

3. This action is dismissed in its entirety with prejudice.



DATED: **November 7, 2006**.

*[signature]*

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge